OREGON-WASHINGTON R. & NAV. CO. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. May 21, 1913.)

No. 2,238.

1. CARRIERS (§ 37*)—TRANSPORTATION OF LIVE STOCK—28-HOUR LAW—VIOLATION—CONFINEMENT—QUESTION FOR JURY.

In an action against a terminal carrier for violating the 28-hour law (Act June 29, 1906, 34 Stat. 607, c. 3594 [U. S. Comp. St. Supp. 1911, p. 1341]), in confining animals in cars longer than the authorized period, evidence *held* to justify submission to the jury of the question whether defendant "knowingly and willfully" confined the stock, in violation of the act.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 95, 927; Dec. Dig. § 37.*]

2. CARRIERS (§ 37*)—TRANSPORTATION OF ANIMALS—28-HOUR LAW—VIOLATION—DEFENSES.

Where defendant's agent, on tender of a car load of hogs by a connecting carrier, refused to receive them until they had been unloaded for food, water, and rest in compliance with the 28-hour law (Act June 29, 1906, 34 Stat. 607, c. 3594 [U. S. Comp. St. Supp. 1911, p. 1341]), knowing that defendant could not deliver the hogs at destination within the legal confinement period, whereupon the agent of the connecting line acquiesced, and defendant later accepted a second tender of the hogs without knowledge that they had not been unloaded and rested, defendant would not be liable for a penalty, provided its agent was misled by the agent of the connecting carrier, and thereby unavoidably kept the stock confined beyond the lawful time.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 95, 927; Dec. Dig. § 37.*]

3. CARRIERS (§ 37*)—TRANSPORTATION OF LIVE STOCK—28-HOUR LAW—VIOLATION.

Defendant terminal carrier, knowing that it could not transport certain hogs to destination within the lawful time without unloading after delivery from the connecting carrier, refused to receive the hogs until they had been unloaded by the connecting carrier for food, water, and rest, but accepted a second tender of the hogs under circumstances that would reasonably have indicated that sufficient time had not elapsed since the first tender within which the connecting carrier could have unloaded and loaded the hogs and allowed proper time for rest, etc., and then retained the hogs in the cars until arrival at destination; they having been confined longer than the prescribed period, the connecting carrier not having unloaded them. *Held*, that requested charges that defendant was entitled to presume that the connecting carrier had complied with the law, and that the connecting carrier's failure to unload the stock after delivery was refused by defendant was an unavoidable cause, which could not have been anticipated by defendant in the ex-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ercise of due diligence and foresight, were inapplicable, and properly refused.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 95, 927; Dec. Dig. § 37.*

Liability of carrier for failure to feed, water, and rest live stock, and for violation of 28-hour law (Act June 29, 1906, 34 Stat. 607, c. 3594 [U. S. Comp. St. Supp. 1911, p. 1341]), see note to St. Joseph Stockyards Co. v. United States, 110 C. C. A. 435.]

In Error to the District Court of the United States for the Northern Division of the District of Idaho; Frank S. Dietrich, Judge.

Action by the United States against the Oregon-Washington Railroad & Navigation Company. Judgment for the United States, and defendant brings error. Affirmed.

A. C. Spencer, of Portland, Or., and Hamblen & Gilbert, of Spokane, Wash., for plaintiff in error.

C. H. Lingenfelter, of Boise, Idaho, for the United States.

Before GILBERT and MORROW, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge. This is an action under the 28-hour law to recover the penalty for confining a consignment of hogs carried in one car for a period exceeding 36 hours; a release having been signed by the shipper. The hogs were shipped, over the Northern Pacific Railway, at Stevensville, Mont., at 12:30 p. m., February 5, 1912, consigned to F. A. Stevens, Wallace, Idaho. The billing of the car was changed by the Northern Pacific agent at Wallace, by striking a line across the words "Wallace, Idaho," and writing "Osborne, Idaho," across the face of the waybill. The car arrived at Wallace some 24 hours later. Concerning its arrival Mr. Bard, the agent of the defendant at Wallace, testified:

"I made inquiry as to this stock when the car was first turned over to us on the transfer. At that time my recollection is that this car had not been unloaded for feed, rest, and water, a few minutes before 1 o'clock in the afternoon. At 1 o'clock p. m. I knew the car had not been unloaded. I did not observe any one unloading the car of hogs after 1 o'clock p. m. on February 6th. I turned the car back on the Northern Pacific—refused to accept the car. The car was later sent to Osborne over the O.-W. R. & N. Co.'s line."

On cross-examination the witness further testified:

"I refused to accept this shipment from the Northern Pacific. I had a conversation with Mr. C. M. Grubb, the general agent at that point. At the time the car was delivered to us in transfer, and the waybill delivered, I noticed that the stock had been confined a period of something to exceed 24 hours and some minutes. I knew it was impossible for us to get that car to Osborne before the following morning, which would exceed the 36-hour period, and I told Mr. Grubb he would have to take the car back in his yards and unload it for feed, rest, and water. Mr. Grubb said: 'All right.' It was very close to 1 o'clock, immediately after it came to my attention, on February 6th. Our company later accepted delivery of the car, between 6:25 and 6:30 that evening. The car was then lined up in train No. 93, going west. At that time I did not personally know what had become of the car, or what had been done with the hogs."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

After receipt of the car by the defendant, it remained in Wallace until the next morning, February 7th, when it was taken to Osborne, a distance of a few miles, and there unloaded at about the hour of 7 o'clock.

The defendant was denied a nonsuit, and the cause went to the jury upon the testimony adduced. The court instructed the jury, among other things, as follows:

"Now, practically the only serious question, the question about which the testimony is not clear, if you credit it, is as to whether or not the defendant here, the Oregon-Washington Railroad & Navigation Company, used reasonable care in finding out whether or not the stock was in fact unloaded and rested and fed and watered at Wallace, after the agent of the defendant told the agent of the Northern Pacific Railroad Company that it would not receive the car in its then condition. I advise you in that respect that it was the duty of the defendant company, through its agent, to make reasonable inquiry and to use reasonable care to find out whether or not the stock had been unloaded and otherwise cared for as provided by the statutes, before it would be warranted in confining the stock longer in the car after it accepted the car. If you find that it did use such reasonable care and was misled, was deceived, and because of being so misled, after using reasonable care, and because of such deception, it inadvertently and unknowingly confined the stock, or kept the stock confined, longer than the statutory period, then your verdict should be in its favor. If, however, you find that it was not so deceived or misled, then, if you find that the stock was confined in excess of the statutory period, you should find against the defendant."

[1] Practically the sole question in the case is whether the evidence was sufficient to carry the case to the jury upon the question whether the defendant knowingly and willfully confined the stock in the car longer than the extended period of 36 hours. We have discussed this phase of the controversy in a companion case between the same parties (205 Fed. 337), but concerning a different shipment over the defendant's lines, designated on the docket here as No. 2,237. The decision is handed down herewith. What is said there is applicable here, and need not be repeated.

We are clear that the testimony here is ample to go to the jury upon the question as to whether the defendant knowingly and willfully so confined the stock. The defendant's agent was apprised by the bill of lading when the hogs were loaded at Stevensville, Mont., and knew by the strongest inference that they had not been unloaded while in transit to Wallace, Idaho. He refused for a while to receive the car from the Northern Pacific, having the word of the Northern Pacific agent that the stock would be unloaded in the meantime; but within 5½ hours or less the defendant did accept the car from the Northern Pacific, and then left it standing upon its own track until the next morning, when it was carried to Osborne, and there unloaded. The time intervening was very short in which to unload a car of hogs, give them 5 hours' rest, and then reload and deliver to the defendant company. So that we say there was ample testimony to carry the case to the jury upon the vital question involved.

[2] The matter upon which the court advised the jury by the instruction above quoted was really defensive in character, but in the end the case went to the jury upon the main question. If the defendant was misled by the agent of the Northern Pacific Company, and

thereby unavoidably kept the stock confined beyond the lawful time, that was a defense, if it amounted to such, which the defendant should have pleaded. It did not do so. But the instruction complained of was pertinent to such an issue, and could have done the defendant no harm, so there was no error in giving the instruction.

[3] Two instructions were asked and refused, to which exceptions were reserved. One was to the effect that the defendant had a right to presume that the Northern Pacific Railway Company had complied with the law; and the other that the failure of the Northern Pacific Railway Company to unload the stock after delivery was refused by the defendant was an unavoidable cause, which could not be anticipated by the defendant in the exercise of due diligence and foresight. These were neither pertinent nor proper under the facts as developed by the evidence in the case.

Affirmed.