THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* CANADIAN FUR TRAPPERS CORPORATION, Appellant.

Crimes — larceny — corporation can commit larceny — liable to prosecution for larceny only for acts authorized by or done with acquiescence of its officers — insufficient proof of larceny by corporation — question for jury whether title to goods sold had passed.

1. A corporation can commit the crime of larceny, but there must be an intent to steal, to misappropriate, to apply the property of another to the use of the corporation, to constitute the crime. It is liable in a prosecution for larceny only for acts which it authorizes through action of its officers or which is done with the acquiescence of its officers.

2. Proof that officers of defendant, a corporation, had instructed its employees to resell coats held on deposit and that when a coat was purchased and the deposit paid, instead of keeping the coat for the purchaser until the balance was paid, the course of business was to resell the coat many times and deliver it to whomever first paid the full purchase price, would establish larceny by the corporation. Where, however, such proof is excluded and stricken out, even though erroneously, and the charge of larceny is supported only by proof of a sale to complainant on deposit and upon her paying the balance and demanding her coat, the attempted delivery to her of a coat that had been sold to another, and there is no evidence that this was done by authority of an officer of the corporation, such proof is insufficient to sustain a conviction for larceny.

3. Whether title to the coat had passed to the complainant was a question for the jury where the evidence showed that coats were sold upon a small down payment, marked with a "will call ticket," indicating the purchaser's name and address, who was given

a purchase slip reading, " Fields free storage for a period of three years including insurance against fire and burglary," and defendant's officers denied that coats were ever resold but claimed to hold such for the customers as the customer's property.

*People* v. *Canadian Fur Trappers Corp.*, 222 App. Div. 791, reversed.

(Argued April 9, 1921; decided May 1, 1928.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 30, 1927, which affirmed a judgment of the Erie County Court rendered upon a verdict convicting the defendant of the crime of grand larceny in the second degree.

*Frank H. Hiscock, I. Maurice Wormser* and *Abraham J. Halprin* for appellant. The judgment convicting defendant of the crime of larceny is contrary to law. A corporation cannot be convicted of a crime whereof an essential element is a specific, evil intent. Such an intent cannot be properly charged to a corporation and there is no appellate decision in this State holding, on consideration of the question, that a corporation can be convicted of such a crime as is charged here. (*Thorne* v. *Truck*, 94 N. Y. 90; *Foulke* v. *New York, etc., R. R. Co.*, 180 App. Div. 848; 228 N. Y. 269; *People* v. *Moore*, 37 Hun, 84; *People* v. *Seldner*, 62 App. Div. 357; *People* v. *Bosworth*, 64 Hun, 72; *People* v. *Pollock*, 51 Hun, 613; *People* v. *Scudder*, 177 App. Div. 225; 221 N. Y. 670; *U. S.* v. *Kelso Co.*, 86 Fed. Rep. 304; *U. S.* v. *Freight Assn.*, 166 U. S. 290; *Telegram Newspaper Co.* v. *Commonwealth*, 172 Mass. 294; *Franklin Union* v. *People*, 220 Ill. 355.) Title to the coat which was the subject of the alleged larceny did not pass from defendant to the complaining witness on the date when she selected it and paid her first installment on the purchase price as the People claim and as the trial judge permitted the jury to find. Therefore, defendant could not commit larceny as charged.

(*Empire State Type Founding Co.* v. *Grant*, 114 N. Y. 40; *Schoyer* v. *Fentons*, 15 App. Div. 158; *Dows* v. *Kidder*, 84 N. Y. 121; *Adams* v. *Roscoe Lumber Co.*, 159 N. Y. 176; *Osborn* v. *Gantz*, 60 N. Y. 540; *Hammett* v. *Linneman*, 48 N. Y. 399; *Lange* v. *Pisch*, 9 Misc. Rep. 475; *Scher* v. *Roher*, 34 Misc. Rep. 792; *Daly* v. *Crawford*, 72 Misc. Rep. 272; *Smith* v. *Lynes*, 5 N. Y. 44; *E. S. I. F. Co.* v. *Grant*, 114 N. Y. 40; *Sanitary Carpet Cleaner Co.* v. *Reed Mfg. Co.*, 159 App. Div. 587.)

*Guy B. Moore, District Attorney* (*William L. Marcy, Jr.*, of counsel), for respondent. A corporation can be lawfully indicted and convicted of the crime of grand larceny. (*People* v. *Hudson Valley Constr. Co.*, 217 N. Y. 172; *People* v. *Rochester Ry. Co.*, 195 N. Y. 102; *People* v. *Dunbar Contr. Co.*, 165 App. Div. 59; *People* v. *Star Co.*, 135 App. Div. 517; *U. S.* v. *Union Supply Co.*, 215 U. S. 50; *U. S.* v. *MacAndrews & Forbes Co.*, 149 Fed. Rep. 823; *U. S.* v. *American Socialist Society*, 260 Fed. Rep. 885; *Spencer Kellog & Sons* v. *U. S.*, 20 Fed. Rep. [2d] 459; *Telegram Newspaper Co.* v. *Commonwealth*, 172 Mass. 294; *State* v. *Rowland Lumber Co.*, 153 N. C. 610.) Title passed to the complaining witness at the time she purchased her coat. (*Proctor & Gamble Co.* v. *Peters, White & Co.*, 233 N. Y. 97; *Standard Casing Co.* v. *California Casing Co.*, 233 N. Y. 413; *Porter* v. *Pennsylvania R. R. Co.*, 217 App. Div. 49; *Matter of Wenger Co.* v. *Propper S. H. Mills*, 239 N. Y. 199; *Groat* v. *Gile*, 51 N. Y. 431; *Boiko* v. *Atlantic Woolen Mills, Inc.*, 195 App. Div. 207; 234 N. Y. 583; *Groves* v. *Warren*, 226 N. Y. 459; *Sanitary Carpet Cleaner* v. *Reed Mfg. Co.*, 159 App. Div. 587.)

CRANE, J.  The defendant, a corporation, has been found guilty of grand larceny, second degree, and fined $5,000. The argument presented here is that a cor-

11

poration cannot commit the crime of larceny as it is impossible for a corporation as such to have intent to steal or misappropriate property.

We think this question has been fairly well settled to the contrary. (Penal Law, secs. 1290 and 1932; General Construction Law [Cons. Laws, ch. 22], sec. 30; *People v. Hudson Valley Construction Co.*, 217 N. Y. 172; *People v. Rochester Ry. & Light Co.*, 195 N. Y. 102; *People v. Dunbar Contracting Co.*, 165 App. Div. 59; 215 N. Y. 416; *U. S. v. Union Supply Co.*, 215 U. S. 50; *U. S. v. MacAndrews & Forbes Co.*, 149 Fed. Rep. 823, 835; *Telegram Newspaper Co. v. Commonwealth*, 172 Mass. 294; *State v. Rowland Lumber Co.*, 153 N. C. 610; *State v. Passaic County Agricultural Society*, 54 N. J. L. 260; *State v. B. & O. R. R. Co.*, 15 W. Va. 362, 388. See the authorities reviewed in 2 British Ruling Cases, p. 238, note.) There are some cases to the contrary. (*Androscoggin Water Power Co. v. Bethel Steam Mill Co.*, 64 Me. 441; *Kentucky v. Ill. Cent. R. R. Co.*, 152 Ky. 320; *Washington v. Seattle Nat. Bank*, 226 Pac. Rep. 259 [May, 1924].)

It has long been the law that a corporation may be liable criminally for the acts of its agents in doing things prohibited by statute. (*New York Central R. R. Co. v. United States*, 212 U. S. 481.) The railroad company in that case was charged with rebating in violation of an act of Congress, and the court said: " We see no valid objection in law, and every reason in public policy, why the corporation which profits by the transaction, and can only act through its agents and officers, shall be held punishable by fine because of the knowledge and intent of its agents to whom it has intrusted authority to act in the subject-matter of making and fixing rates of transportation, and whose knowledge and purposes may well be attributed to the corporation for which the agents act. While the law should have regard to the rights of all, and to those of corporations no less than to those of individuals, it cannot shut its eyes to the fact that the great

majority of business transactions in modern times are
conducted through these bodies, and particularly that
interstate commerce is almost entirely in their hands,
and to give them immunity from all punishment because
of the old and exploded doctrine that a corporation cannot
commit a crime would virtually take away the only means
of effectually controlling the subject-matter and correcting
the abuses aimed at."

This is the law for corporations whose servants violate
positive prohibitions or commands of statutes regarding
corporate acts.   Such offenses do not necessarily embody
the element of intent to commit a crime.   The corporation
would be guilty of the violation in many instances
irrespective of intent or knowledge. (*Overland Cotton
Mill Co.* v. *People,* 32 Colo. 263.)

When it comes, however, to such crimes as larceny,
there enters as a necessary element the intent accom-
panying the act.   There must be the intent to steal, to
misappropriate, to apply the property of another to the
use of the corporation to constitute the crime.   The mere
knowledge and intent of the agent of the servant to steal
would not be sufficient in and of itself to make the cor-
poration guilty.   While a corporation may be guilty of
larceny, may be guilty of the intent to steal, the evidence
must go further than in the cases involving solely the
violation of prohibitive statutes.   The intent must be the
intent of the corporation and not merely that of the
agent.   How this intent may be proved or in what
cases it becomes evident depends entirely upon the
circumstances of each case.   Probably no general rule
applicable to all situations could be stated.   It has been
said that the same evidence which in a civil case would
be sufficient to prove a specific or malicious intention
upon the part of a corporation defendant would be
sufficient to show a like intention upon the part of a
corporation charged criminally with the doing of an act
prohibited by law (*U. S.* v. *Kelso Co.,* 86 Fed. Rep.

304), and Judge Hough in *U. S.* v. *New York Herald Co.* (159 Fed. Rep. 296) said: " To fasten this species of knowledge upon a corporation requires no other or different kind of legal inference than has long been used to justify punitive damages in cases of tort against an incorporated defendant." See, also, *People* v. *Star Co.* (135 App. Div. 517), where the malicious intent of the agents in writing a libel was attributable to the corporation. See, also, *Grant Bros. Construction Co.* v. *U. S.* (114 Pac. Rep. 955), and *State* v. *Salisbury Ice & Fuel Co.* (166 N. C. 366), involving false pretenses. Also *Standard Oil Co.* v. *State* (117 Tenn. 618), where the intent of the officers became the intent of the corporation. Sufficient to say that in this case the law was correctly laid down to the jury by the trial judge when he said: " The defendant is liable in a prosecution for larceny only for acts which it authorizes through action of its officers or which is done with the acquiescence of its officers, and unless the jury find beyond a reasonable doubt such authority or acquiescence, there must be an acquittal." This in my judgment was a correct statement of the law for this case and follows the intimation contained in *People* v. *Hudson Valley Construction Co.* (*supra*), where this court said: " The proof permitted the jury to find that the wrongful acts attributed to the employees and agents of the defendant were performed in its service so methodically and continuously as to indicate the sanction of the corporation. The court properly charged that the corporation could act only through its officers and agents and was amenable to the law for the acts of its officers and those of its employees of which it had knowledge." And in *State* v. *Baltimore & Ohio R. R. Co.* (*supra*) it was stated: " It is but a reasonable inference that acts which are habitually done by the authorized agents of a corporation are done with their approval; and this is indeed almost the only manner in which the approval by the corporation of the acts of its agents can ever be proven.

The tacit appropriation by a corporation of the benefits of the acts of its agents, repeatedly occurring, is full and satisfactory proof of the assent of the corporation to the doing of such acts."

There may be cases where the single act of an officer will constitute larceny by a corporation, but we are not dealing with such a case here, and as I have stated, it would probably be unwise to attempt to place limits upon corporate criminal liability. The rule is, however, that the acts must be corporate acts authorized by it. As before stated, this may be proved in many different ways.

In this case the able assistant district attorney, Mr. Marcy, recognized the rule and attempted to bring his evidence within it. He sought to prove that one of the officers of the corporation had given instructions to do the acts constituting larceny and he also sought to prove that there had been such a long-continued user of felonious practices as to prove knowledge or intent upon the part of the corporation. In his attempt to substantiate these elements of the crime, he was largely frustrated by the rulings of the trial judge.

At this point it may be well to state the facts in order to elucidate our meaning. The defendant was a domestic corporation known as Canadian Fur Trappers Corporation, carrying on the business of selling fur coats on the installment plan in Buffalo, N. Y., under the name of "Fields." Four brothers, named Dornfeldt, constituted the corporation and were its only officers. It advertised attractive sales during the summer of 1926. The prosecuting witness, Mrs. Ella Stanley, bought a coat at one of these sales for $295, paying a deposit of $25, the coat to be delivered to her upon payment of the balance. There was no time fixed in which the balance was to be paid. The evidence fairly shows that the defendant agreed to keep the coat in storage or on deposit for Mrs. Stanley until the balance was paid. Later in

[248 N. Y. 159]        Opinion, per Crane, J.        [May,

the fall when she paid the balance the coat was gone. It had been disposed of and there was evidence which would justify the jury in believing that some one in the defendant's employ had resold the coat. The defendant's employees and officers attempted to deliver to Mrs. Stanley another coat which they said was the one she had selected. In this they were evidently mistaken, if not willfully falsifying, as the coat was of a different size and make. The evidence is quite conclusive upon this point. There is also evidence to show that the coat which this defendant through its employees attempted to deliver to Mrs. Stanley as the one purchased had been theretofore sold to Vera M. Owen. Whatever became of Mrs. Stanley's coat no one apparently knows. The fact is she did not receive it when she paid the balance of her money, and the coat which was offered to her was not the one she had selected. The evidence sustains this conclusion. Of course upon these facts alone, these two transactions, the defendant could not be found guilty of larceny as defined by our penal law. It is at this point the People, therefore, attempted to prove that the officers of the corporation had instructed the employees to resell the coats held on deposit and that this was the method of doing business. When a coat was purchased and the deposit paid, instead of keeping the coat for the purchaser, as the defendant promised to do, until the balance was paid, the course of business was to resell the coat many times and deliver it to whomever first paid the full purchase price. Such facts, if proved, would no doubt establish larceny by the corporation. The difficulty arises over the failure of this proof.

Two witnesses apparently knew the custom and method of doing business carried on by the defendant in its Buffalo store. Mrs. Stella Nowicki was the saleslady through whom Mrs. Stanley purchased the fur coat, and Alexander H. Shack was the general manager of the store, who knew about the instructions which had been given

1928.]          Opinion, per CRANE, J.          [248 N. Y. 159]

to the salesladies and others regarding sales.   Both were
witnesses for the People, and attempted to testify to the
instructions given by or in the presence of Mr. Morris
Dornfeldt, one of the officers of the company.   Morris
Dornfeldt was the officer in charge at this time of the
Buffalo store.   The district attorney fully appreciated the
importance and necessity of the testimony of these two
witnesses.   He repeatedly tried to bring out from them
the fact that coats purchased and put aside with a " will
call ticket " on them, were resold under the instructions
of the Dornfeldts and that such was the regular and
customary way of doing business.   In these attempts
he was frustrated by the rulings of the trial judge.   He
not only sustained objections to such line of testimony
and struck out evidence of this nature when it was
introduced, but ruled that the People must confine their
evidence to specific instances and to a very limited time ·
in the summer of 1926.   Although these rulings were
erroneous, yet we cannot consider the evidence stricken
out as evidence in the case simply because the nature
of it appears in the printed record.   One or two illustra-
tions will bear out these statements.   The witness
Nowicki was asked:

" Q. Did Mr. Dornfeldt, Mr. Fish, or Mr. Johnson or
any manager or any man in the head of the firm with
relation to the Fields Store ever instruct you in regard
to the selling or reselling of coats on which there had
been made a deposit?   A. Yes, sir.

" Q. Who gave you those instructions or this one you
are referring to?   A. There would be Mr. Fish —

" Q. Just tell what Mr. Fish told you in that regard.
A. Mr. Fish said that the coats were in stock we should
try to sell, and if there is any coats we couldn't satisfy
a customer, with small deposits, we should go and get
those coats and not mention anything that the coat was
a deposit, and take the ticket off, and show the customer,
and if the customer should say, ' Why wasn't the coat

in here? ' we should say, ' The coat just came in and hasn't been in stock,' where the coat was already sold perhaps two or three times, and two or three tickets on it."

The court struck out the part of the answer, " where the coat had been sold," which of course was the part important to the case. With this part stricken out the answer simply means that the customer was shown a coat which had been set aside as sold. This is no evidence of wrongdoing. The only other evidence she gives regarding instructions is as follows: " Mr. Dornfeldt, the night just before the opening, he said: ' Girls, you got the instructions from Mr. Shack, and I wish you would all understand and try your best tomorrow and see how many coats you can sell with Mr. Shack's instruction, and if you can't do anything I will be on the floor tomorrow, and also Mr. Shack, Mr. Johnson and Mr. Fish, and if you can't do any sale, if you can't sell the coats in the stock, if you can't sell the coats with deposits, call one of us men, and we will see what we can do to the customer."

Mr. Alexander H. Shack also attempted to testify to the above instructions and customs. His line of testimony ran something as follows: " Q. Did you ever give instructions to the saleswomen in your capacity as superintendent or to Mr. Fish or Mr. Johnson in regard to the re-sale of coats on which there had been made a deposit? A. No; it was sort of an unwritten law without instructions." This also was stricken out by the court. " Q. Were you ever present at any time during the months of July and October, 1926, when you heard any of the Mr. Dornfeldts or Mr. Johnson or Mr. Fish instruct the sales women in regard to the re-sale of coats on which there had been made a deposit? A. I was, yes." He was asked what the conversation was, and this is his answer: " *   *   * in the month of August I heard Mr. Johnson at one time advise, instruct

and I heard Mr. Fish at another time in August on another coat. But this particular coat, Mr. Johnson instructed the saleswoman to go to the sold coats and get the size to show to her."

It is reasoned by the People that the defendant could not have carried on business by keeping many $300 coats in storage upon which only a deposit of $25 or less had been made — the capital invested would be too great to do a profitable business. This may be so and yet such reasoning may not supplant proof of the felonious method of doing business. Standing alone and by itself, such reasoning would be insufficient to prove larceny. Naturally we can infer from the evidence stricken out by the court that the defendant resold the deposit coats many times but the jury were not justified in considering such evidence. It was not part of the case against the defendant although printed in this record on appeal. We must strip the case of all such evidence.

This leaves the charge against the defendant resting upon the sale to Mrs. Stanley and the evidence of the resale or attempted resale later of Mrs. Owen's coat to Mrs. Stanley. The defendant's officers and employees denied that they had resold Mrs. Stanley's coat or that such was their method of doing business.

Under the law as correctly charged in this case by the trial judge, the defendant corporation was criminally liable only for such felonious acts as it had authorized through the Dornfeldts, the officers of the corporation, or for such acts as through a course of business must have been known to the corporation and its officers, and thus authorized by them. The People failed to prove that the officers or any one acting as manager of the Buffalo store, in the place and stead of the officers had authorized a resale of the complainant's coat; and further, that if the complainant's coat was resold, the resale of purchased coats was a continuous and established practice in the defendant's establishment.

The appellant insists that there was no evidence to show that title to the coat had ever passed to Mrs. Stanley. We think. that this was a question of fact properly submitted to the jury. The evidence was that such coats were sold upon a small down payment, then set aside and held for the customer, marked with a ticket, called a " will call ticket," indicating the purchaser's name and address. The defendant's officers denied that these coats were ever resold but claimed to hold such goods for the customers as the customers' property. Such meaning we think could be given to the guaranty contained upon the back of the purchase slip handed to Mrs. Stanley. This reads, " Fields Free Storage for a period of three years including insurance against fire and burglary." The insurance would only be interesting to the purchaser in case the title to the property was in her. Taken in connection with section 100 of the Personal Property Law (Cons. Laws, ch. 41), we think it was at least a question for the jury to determine whether title to this fur coat had passed or was intended to pass to Mrs. Stanley at the time of her purchase. Of course if no title had passed there could be no larceny by the defendant.

There are other rulings which we think were not quite correct, but it is unnecessary to refer to them, as in view of what is here said the judgment of the Appellate Division and that of the County Court should be reversed and a new trial ordered.

CARDOZO, Ch. J., POUND, ANDREWS, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Judgments reversed, etc.