THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* WALTER RAPHAEL and ANNBEST APARTMENTS, INC., Defendants.

City Magistrate's Court of New York, Borough of Manhattan, War Emergency Court, September 4, 1947.

*William L. Messing, Chief, Rent Enforcement Section, Office of Rent Control (Samuel I. Hodes of counsel), for plaintiff.*

*Irving Schneider* for defendants.

PLOSCOWE, C. M.  The Annbest Apartments, Inc. (hereinafter referred to as the corporation), operates a furnished apartment house at 206 West 21st Street, New York City.  It employs the defendant Walter Raphael as a superintendent of this house. Both the corporation and Raphael were charged with violation of the Sharkey Act (now Administrative Code of City of New York, § U41–4.0, subd. d) which makes it unlawful for any person " to demand or receive any rent or other consideration for any housing * * * accommodations " in excess of that prescribed by rent regulations.  The proof showed that on two occasions the defendant Raphael took an illegal bonus as a condition precedent to the renting of an apartment.  He was accordingly convicted of a violation of the Administrative Code. The Office of Rent Control contends that as a matter of law the corporation which employs Raphael must likewise be convicted, despite the fact that there is no proof that Raphael shared the illegal bonuses with the corporation or with any officer thereof or that any officer of the corporation had knowledge of, authorized or participated in the taking of the bonuses. The position of the Office of Rent Control is that Raphael was charged by the corporation with the duty of renting apartments. The acceptance of the illegal bonus arose out of the performance of that duty by Raphael.  The corporation is, therefore, responsible for the criminal act of its agent.

Unfortunately, the cases do not support these contentions of the Office of Rent Control. Corporations may be held liable criminally for crimes and offenses committed by their agents. (See *People* v. *Rochester Ry. & L. Co.*, 195 N. Y. 102 [1909]; *People* v. *Canadian Fur Trappers Corp.*, 248 N. Y. 159 [1928]; *People ex rel. Rice* v. *Sheffield Farms Co.*, 225 N. Y. 25 [1918].) The cases, however, have not agreed as to the kinds of crimes for which a corporation may be held liable, for not all crimes may be committed by corporations. In the *Rochester Railway* case (*supra*), for example, it was held that a corporation could not be convicted of manslaughter even though its employees had been negligent in installing gas apparatus thereby causing death.

In the instant case, it may be assumed without argument that a corporation can violate the Sharkey Act. (*People* v. *Zion Nat. Kosher Sausage Factory*, 184 Misc. 689 [1945].) The only question here is when does such liability arise. Is the mere fact that an agent committed a criminal act in the course of his employment sufficient to charge the corporation? Must a corporation be held criminally, even where the proof is consistent with the view that the agent was acting entirely on his own in violating the statute and in no way shared the proceeds of such violation with the corporation?

In our opinion, before a corporation can be charged with criminal liability for a crime or offense committed by an employee or agent acting within the scope of his authority, something more than the mere fact of employment or agency must be shown. A corporation is chargeable with the crime of an agent or employees, acting in the scope of his employment, when (1) the corporation has benefited or profited from the crime, or (2) its officers participated in the crime, or (3) its officers authorized, sanctioned or acquiesced in the commission of the crime by the agent or employee, or (4) it had knowledge of the crime, or (5) it was chargeable with negligence in not obtaining such knowledge, through reasonable inquiry.

In the leading case on corporate criminal liability, *New York Central R. R.* v. *United States* (212 U. S. 481 [1909]) at least four of the above-mentioned elements were present. There the corporation was convicted of the violation of a statute prohibiting rebates to shippers. The proof showed that the general manager of the corporation not only knew and approved of the rebates, but that the rebates were paid for out of the funds of the corporation. In the cases in which corporations have been

convicted of conspiracies to defraud or of obtaining money under false pretenses, there is normally participation by the officers of the corporation in the frauds, or benefit or profit to the corporation from the frauds. Usually there is both. (See, for example, *People* v. *Hudson Valley Construction Co.,* 217 N. Y. 172 [1916]; *People* v. *Dunbar Contracting Co.,* 165 App. Div. 59 [1914]; *Mininsohn* v. *United States,* 101 F. 2d 477 [1939].)

In the *Hudson Valley* case (*supra*) the Court of Appeals affirmed the conviction of the corporation, stating in the course of its opinion (pp. 178–179) that " The proof permitted the jury to find that the wrongful acts attributed to the employees and agents of the defendant were performed in its service so methodically and continuously as to indicate the *sanction of the corporation.* The court properly charged that the corporation could act only through its officers and agents and *was amenable to the law for the acts of its officers and those of its employees of which it had knowledge.*" (Italics supplied.) Presumably then, if a corporation does *not* have knowledge of the criminal act of its agent, it cannot be held liable therefor. This is evident from the approval by the Court of Appeals of the following instruction to the jury in the *Canadian Fur Trappers* case (248 N. Y. 159, 164, *supra*): " ' The defendant is liable in a prosecution for larceny *only for acts which it authorizes through action of its officers* \* \* \* and unless the jury *find beyond a reasonable doubt such authority or acquiescence, there must be an acquittal.*' " (Italics supplied.) In the latter case, the Court of Appeals was compelled to reverse a conviction of larceny obtained against a corporation where, on the basis of the evidence legally before the jury, the People had failed to establish knowledge on the part of the corporation or authorization by officers of the corporation to commit the larcenies complained of. Judge CRANE, however, noted that considerable evidence tending to show a felonious course of conduct on the part of the corporation and its officers was erroneously excluded by the trial judge. With such evidence legally in the record, the court would have had no difficulty in sustaining the conviction.

In the *Sheffield Farms* case (225 N. Y. 25, *supra*) the corporation was convicted of a violation of a statute (the child labor law) although it claimed that it had no knowledge of such violation on the part of its employees. However, the Court of Appeals pointed out, in affirming the conviction, that the cor-

poration had been negligent in failing to use reasonable diligence to secure knowledge. " There is no safety in ignorance ", stated Justice CARDOZO (p. 30), " if proper inquiry would avail * * *."

The case of *Holland Furnace Co.* v. *United States* (158 F. 2d 2 [1946]) indicates that the Federal courts are not inclined to charge a corporation with the criminal act of a subordinate employee where it or any of its officers had no knowledge of the criminal act. In that case, the corporation and one of its salesmen, Boyd, were convicted of violating orders of the War Production Board. A certificate that equipment was " worn out, damaged beyond repair " was necessary before the corporation could legally deliver a new furnace to a consumer. Boyd, who was anxious to boost his sales, procured a false statement from a consumer on the basis of which a sale and delivery were consummated. The corporation had no knowledge of the salesman's fraud, nor did any of its officers know of the false statements in the consumer's certificate. The conviction of the corporation was, therefore, reversed by the Circuit Court of Appeals, although the government contended (p. 6), as it does in the instant case, " that a corporation is criminally responsible for the acts of its agent while acting within the scope of his employment in the business of the corporation * * *." " The sweeping dicta in some of the authorities ", stated Judge MARTIN in his opinion for the court (p. 8), " would seem to lend some support to the Government's position; but to hold the corporation * * * criminally liable for Boyd's unlawful acts *on the facts of this case* would carry corporate responsibility beyond the holding in any case which has been cited and beyond the boundary to which we think corporate criminal responsibility should be carried." (For a similar holding see *John Gund Brewing Co.* v. *United States*, 204 F. 17 [1913].)

The case of *C. I. T. Corporation* v. *United States* (150 F. 2d 85 [1945]) is strongly relied on by the People to sustain its position in the instant case. There the corporation was convicted of a conspiracy to violate the National Housing Act (U. S. Code, tit. 12, § 1701 *et seq.*). The conspiracy charge was based on the fact that a branch manager of the corporation, one Wilkins, made false statements in applications for F. H. A. insurance on loans made by the corporation. In arguing for a reversal of the conviction, it was contended on the part of the corporation (p. 89) that " Manager Wilkins * * * had no corporate power to commit such acts of bad faith with a criminal

intent imputable to the corporate entity." It was also argued that Wilkins was "too low in the corporate hierarchy" to bind the corporation. But it was perfectly clear to the court which affirmed the conviction that the corporation had delegated to Wilkins the sole authority to determine the truth or falsity of credit applications. Having delegated this authority to Wilkins, the other officers of the corporation could not hide behind their lack of knowledge of Wilkins' misdeeds. Moreover, Wilkins did not make any personal profit or did not obtain any personal benefit out of the criminal transactions. The benefits or profits of these transactions accrued to the corporation. It is evident that the facts of the *C. I. T.* case are distinguishable from the case at bar. There is no proof in the instant case that the benefits or profits of the criminal act accrued to the corporation.

Nor do the cases in which corporations have been convicted of violations of price regulations because of the acts of subordinate employees sustain the position of the People in this case. In all cases of this type the corporation clearly derives a benefit from the illegal prices or from the illegal sales and hence may be properly held accountable for the violation of the price regulations by its employees. (See, for example, *United States* v. *George F. Fish, Inc.,* 154 F. 2d 798 [1946]; *Old Monastery Co.* v. *United States,* 147 F. 2d 905 [1945]; *People* v. *Zion Nat. Kosher Sausage Factory,* 184 Misc. 689, *supra; Regan* v. *Kroger Groc. & Baking Co.,* 386 Ill. 284 [1944].)

In the instant case, there is no evidence that the corporation profited or benefited from the illegal bonus. There is no proof that any officer of the corporation authorized or acquiesced in the acceptance of the illegal gratuities on the part of the superintendent or that any officer of the corporation shared in such gratuities. There is no proof that any officer of the corporation had knowledge of the illegal acts of the superintendent. There is no proof that the corporation was negligent in not discovering that its superintendent was exacting bonuses as a condition precedent to the rental of apartments.

Under all the circumstances, therefore, in view of the **authorities cited above, the corporation must be acquitted.**