OHIO CASUALTY INSURANCE CO., Plaintiff, v. DAVEY TREE EXPERT CO., Defendant.

Municipal Court, Ravenna.

No. 4729. Decided April 21, 1959.

*Mr. Joseph Kainrad,* for plaintiff.
*Messrs. Loomis & Jones* and *Mr. James N. Ulrich,* for defendant.

For further history see *Omnibus Index* in bound volume.

FRANCE, J.  This matter was heard on plaintiff's amended petition, defendant's answer, stipulations entered into by counsel for the parties and the evidence.

The essential facts claimed in the petition and established by the evidence are that Marigold Drive and Chestnut St., both hard-surfaced roads in Mentor, Ohio, intersect to form an "L" intersection, each street terminating as it joins the other at right angles; that around the L, on the exterior side, are grouped three residences of reasonably recent construction, and running clockwise, owned and occupied by one Lazo, by William and Beth Ware (plaintiff's subrogor) and one Maloney; that the underlying ground stratum in the immediate area is sand; that the water table is very high, running from six feet to zero beneath ground level; that in the immediate area of the Ware and Maloney residences the table is approximately 42 inches beneath the surface and somewhat more around the L at the Lazo property; that the combination of sand, high water table and possibly other factors make for high conductivity through the soil of concussion and tremors from the shock of objects colliding with the ground.  Testimony in the record indicates that the mere dropping of concrete building blocks can be felt through the ground at considerable distance.

Lazo contracted with defendant Davey Tree Expert Co. for the removal of a live tree some 80 feet tall and 30 inches stump diameter from his front yard. On November 23, 1957, Davey, through a foreman and crew, proceeded to "top" the tree down to a height of about 45 feet and stripped the branches, leaving the 45 foot section of main trunk. It then notched the trunk, and attached pull rope to its truck so that the trunk would fall, when cut, on soft ground and brush within the limits of the Lazo property. No guy ropes were attached for further control of direction of fall, nor did Davey's foreman consider that any circumstances of danger to the property or adjacent property required it to "take down" the trunk piece by piece in smaller units, although testimony indicated that one or the other or both precautions are taken in highly built up areas where need appears.

The trunk was then sawed and the rope pulled in the indicated direction. At this point something went wrong. Instead of falling parallel with Marigold Street, the trunk fell outward into the street, rupturing electric and other utility lines on its way and hitting the hard surface of the pavement. Electric power in the Maloney and Ware houses was cut off. At the same time plaster in some rooms of the Maloney house was cracked and fell. In the Ware house, unoccupied at the time, plaster in several rooms intact earlier in the day was found after the occurence badly cracked around door and window openings and a vapor barrier beneath the floors and above the crawl space under the house was split open. Testimony was that the cracks appearing were not of the type produced by settling and that foundation blocks in the vicinity of the rupture of vapor barrier were completely undamaged. The nature of the damage was such as to be unexplained except in terms of a transmitted concussion.

There was no conflict in the testimony relating to the damage to the Ware property, subject of this action, either in nature or amount. Defendant did, however, raise, by motion at the close of plaintiff's case and renewed at the close of all the evidence, the question of proof of assignment of the Ware interest to plaintiff.

The stipulations in writing signed by counsel for the par-

ties were handed up to the trial judge, sitting without intervention of jury, at the time of opening statements, perused by him and placed in the file of the case with the pleadings. Those parts relevant to the assignment of interest are as follows:

"5. That the Ohio Casualty Co., plaintiff herein, paid to William M. Ware and Beth C. Ware, the sum of Three Hundred Seventy Dollars."

"6. That William M. Ware and Beth C. Ware signed a subrogation receipt for Three Hundred Seventy Dollars to the Ohio Casualty Co."

The trial judge, as trier of the facts, was obviously intended to consider the stipulations and they were not first delivered to the reporter for inclusion in the trial testimony, since they were intended for inclusion in the file and hence final record of the case. So far as the record is concerned, therefore, they constitute admissions, by the defendant, of the truth of the relevant allegations of plaintiff's petition and their omission from the transcript of testimony is not fatal.

The defendant also raised in his motion failure of proof of venue. Conceding that an action for damages to realty is a transitory action, defendant contends that in an action against a corporation it was incumbent on plaintiff to prove as part of its case, against a general denial, compliance with Section 2307.36, Revised Code, by showing the existence of defendant's office within the limits of Portage County . The bailiff's return shows service on a vice-president of the company "at its usual place of doing business." If there were no proper venue the matter could be raised by motion to quash service. *Central Ohio Emulsion Corp.* v. *Whitman Co.*, 99 Ohio App., 102, or by special answer. Section 2309.10, Revised Code. Venue in a transitory action is akin to lack of corporate capacity which must be specially raised and may not be taken advantage of under general denial. See *Smith* v. *Wood Sewing Machine Co.*, 26 Ohio St., 562; *Brady* v. *National Supply Co.*, 64 Ohio St., 267. The question of venue was foreclosed to defendant by his filing of answer without setting up such a defense.

The court having found on the evidence that the damage complained of resulted proximately from the fall of the tree on the hard surfaced road and the transmission of the result-

ing shock through the ground, and having found that the fall resulted from the negligence of defendant's servant in failing to take adequate precautions against the tree falling in the road, the only remaining question to be disposed of is that of the foreseeability of the resulting harm to plaintiff's subrogor, Ware.

The dropping of the tree on the street was clearly negligence. Was it negligence as to Ware, the property owner, bearing in mind that there is "no negligence in the air"? *Palsgraf* v. *Long Island Railroad Co.*, 248 N. Y., 162 N. E., 99. Since utility wires and access to his home by road were involved, it seems clear that Ware, in his capacity of homeowner, was forseeably affected by the dropping of the tree onto the street, and that the property right invaded by the cracking of plaster in the house was, in the words of Chief Judge Cardozo "of the same order" as the loss of power, danger of fire or interruption of access involved in power line rupture and street blockage. See *Palsgraf, supra*, 162 N. E., 100. It is equally apparent, however, that the exact mode in which the negligence reacted on Ware's property interest and the nature of the resulting damage were not forseeable to a normal prudent person.

If forseeability relates only to the negligent act there is liability; if it relates as well to the question of causation then there is no liability.

The Ohio cases pay lip service to the statement in 65 Corpus Juris Secundum, 673, that "Once it is shown that the person charged with negligence should, in the exercise of ordinary care, have anticipated that some injury would be likely to result from his conduct, it has been held that forseeability becomes immaterial on the question of proximate cause:" *Mudrich* v. *Standard Oil Co.*, 153 Ohio St., 31; *Gedeon* v. *East Ohio Gas Co.*, 128 Ohio St., 335; *Lewis* v. *Woodland*, 101 Ohio App., 442. Unfortunately in all three of the cases, after stating the quoted proposition clearly, the opinion of the court goes on to discuss the question of foreseeability of result in determining proximate cause.

Thus in the Mudrich case, where the negligence consisted of leaving pools of gasoline on a filling station apron, resulting

in personal injury to a small boy playing with matches, the Court asks the question "Was it a question of fact whether the conduct of Jimmy Solka and the plaintiff was reasonably forseeable?" and answers it by reserving it for jury consideration.

In the Gedeon case, where defendant's employee stepped from the left side of his parallel parked car directly into a stream of vehicular traffic, causing one car to swerve to avoid him, and in so doing to come into collision with a truck operated by plaintiff's decedent, the opinion states (p. 338):

"It is not necessary that injury to the plaintiff, himself, be forseeable. It is enough that the act in question may, in human probability, produce harm to persons similarly situated."

But on page 341 the same opinion, in discussing causation, goes on to say:

"The jury should have been allowed to pass on the question whether the *probability that such collision* would result should have occurred to the mind of a reasonably prudent and careful person." (Emphasis added.)

Both cases involved the question of intervening acts of other persons as breaking the chain of causation. This may serve to explain the introduction of the question of foreseeability into proximate cause. In the Court of Appeals Case noted, *Lewis* v. *Woodland*, no such intervening act occurred. There a planned practical joke, the placing of a toy lizard in the lap of a lady passenger in a car, was successful. Plaintiff's expected reaction was merely more violent than anticipated; she leaped against the top of the car, breaking her neck. In review, the majority of the court makes the statement quoting Corpus Juris Secundum that the exact consequence need not have been specifically contemplated or anticipated, but immediately follows with the contradictory statement: (101 Ohio App., 447.)

"It is therefore, concluded that the question of foreseeability of the consequences of the defendant's perpetration of a joke was properly for consideration by the jury under appropriate instruction of the court."

The failure to instruct the jury on the point being an error (?) of omission it was held not to be fatal.

Judge Conn, of the Court, in a separate concurring opinion notes, however: (p. 448.)

"In my opinion, respectfully submitted, the foreseeability rule or test of liability is applicable where the alleged culpable act is challenged on the ground that it was not tortious, or where the tortious character of the act is conceded but an issue of proximate cause is raised. . . ."

"There was no issue of an *intervening cause or contributory negligence* on part of the plaintiff."

"On the record before us it is my opinion that the issue of forseeability should not be considered on the ground that it is spurious and confusing."

If, as Judge Conn implied, the question of forseeability in causation is limited to those Ohio cases in which either claimed active contributory negligence (*Mudrich*) or intervening acts of third parties (*Gedeon*) are involved, the Ohio gloss on the text of forseeability as part of negligence alone is probably not harmful, although distasteful to the legal purists. The logical view *that forseeability should be left entirely out of consideration in the question of causation,* is advanced by Professors Scarborough in 2 Rutgers Law Review, 196, and Goodhart, 39 Yale Law Journal, 449, 459-60.

However, since there was no contributory negligence or intervening act of a third person in this cause, but only a pre-existing geological condition, both the Ohio and Goodhart-Scarborough tests are satisfied; forseeability does not attach itself to the issue of proximate cause in this case and the result is the liability of defendant.

Defendant strenuously contends that since the damage would have occurred, as a result of subsurface concussion, even had the tree been dropped on soft ground, as planned by defendant, there should be no liability for the same damage merely because the tree dropped on the road. Interesting as this proposition may be as an abstract theory of law it seems scarcely founded on fact, for the record shows that when the tree in question dropped on the hard surface of the road the concussion was magnified and intensified in the fashion of the tightly stretched skin of a tympani, whereas a few weeks earlier a similar tree, taken down from the same Lazo property at a

closer distance to the damaged property and falling on soft ground, produced no untoward result.

Counsel will prepare entry finding for the plaintiff in the full amount of the claim and entering judgment accordingly.