**BOSTON & M. R. R. v. UNITED STATES.**

No. 3588.

Circuit Court of Appeals, First Circuit.

Feb. 4, 1941.

[2] The basic period of 28 hours was extended to 36 hours in the present case by written request of the shipper, as provided in Section 1 of the Act.

Richard W. Hall, of Boston, Mass., for appellant.

Alfred G. Malagodi, Asst. U. S. Atty., of Boston, Mass. (Edmund J. Brandon, U. S.

Atty., of Boston, Mass., on the brief), for appellee.

Before MAGRUDER and MAHONEY, Circuit Judges, and FORD, District Judge.

MAGRUDER, Circuit Judge.

Boston & Maine Railroad appeals from a judgment of the District Court, 30 F. Supp. 721, assessing a statutory penalty against it for violation of the Cruelty to Animals Act, 34 Stat. 607, 45 U.S.C.A. §§ 71–74. This Act forbids carriers to confine animals in cars for a continuous period in excess of 36 hours without unloading the same into properly equipped pens for rest, water and feeding, "unless prevented by storm or by other accidental or unavoidable causes which can not be anticipated or avoided by the exercise of due diligence and foresight." Any railroad which "knowingly and willfully fails to comply" with this requirement is subject to a penalty of not less than $100 nor more than $500. Material parts of the statute are copied in the footnote.[1]

Trial by jury was waived. The facts as agreed upon between the parties and as found by the court are as follows:

"On December 3, 1936 the defendant received a carload of sheep at Mechanicville, N. Y. for transportation to Somerville or

---

[1] "That no railroad * * * whose road forms any part of a line of road over which cattle, sheep, swine, or other animals shall be conveyed from one State or Territory or the District of Columbia into or through another State or Territory or the District of Columbia * * * shall confine the same in cars * * * for a period longer than twenty-eight consecutive hours without unloading the same in a humane manner, into properly equipped pens for rest, water, and feeding, for a period of at least five consecutive hours, unless prevented by storm or by other accidental or unavoidable causes which can not be anticipated or avoided by the exercise of due diligence and foresight: Provided, That upon the written request of the owner or person in custody of that particular shipment, which written request shall be separate and apart from any printed bill of lading, or other railroad form, the time of confinement may be extended to thirty-six hours. In estimating such confinement, the time consumed in loading and unloading shall not be considered, but the time during which the animals have been confined without such rest or food or water on connecting roads shall be included, it be- ing the intent of this Act [chapter] to prohibit their continuous confinement beyond the period of twenty-eight hours, except upon the contingencies hereinbefore stated. * * *

"Sec. 3. That any railroad * * * who knowingly and willfully fails to comply with the provisions of the two preceding sections shall for every such failure be liable for and forfeit and pay a penalty of not less than one hundred nor more than five hundred dollars: Provided, That when animals are carried in cars, boats, or other vessels in which they can and do have proper food, water, space, and opportunity to rest the provisions in regard to their being unloaded shall not apply.

"Sec. 4. That the penalty created by the preceding section shall be recovered by civil action in the name of the United States in the circuit or district court holden within the district where the violation may have been committed or the person or corporation resides or carries on business; and it shall be the duty of United States attorneys to prosecute all violations of this Act [chapter] reported by the Secretary of Agriculture, or which come to their notice or knowledge by other means."

Boston, Mass. The animals at that time had been confined continuously for 22 hours without unloading for feeding, water, and rest. The car left Mechanicville in the defendant's train at 8:27 p.. m. on December 3, 1936. The statutory period was due to expire at 5:50 a. m. on December 4.[2] There was therefore approximately 9½ hours of available running time to make the run to Boston. The average running time from Mechanicville to Boston is 8½ hours and the scheduled running time is 8 hours and 45 minutes. An inspection of the train before departure from Mechanicville disclosed it to be in good running condition. No delays were encountered until the train reached Ayer, Massachusetts, where an inspection revealed that the brakebeam on one of the cars in the train was broken and down; there was a delay of 35 minutes repairing the brakebeam. After the brakebeam was repaired, the engineer started the train to Boston. A conductor was standing on the ground waiting to swing·onto the caboose as it passed him. When the caboose reached him the conductor could not get on it, because of the speed of the train and the icy footing. Consequently, the train passed the conductor leaving him on the ground. At some point beyond Ayer, it·was discovered that the conductor was not on the train and the train was then stopped and backed up to pick him up. This resulted in a further delay of 40 minutes. The car arrived in Boston at 6:05 a. m. on December 4th and was placed for unloading at 6:30 a. m., 40 minutes beyond the period allowed by the Statute."

All the defendant's requests for specific rulings of law were granted by the court. The error charged is that the court below denied defendant's motion for judgment, and ruled, upon the contrary, that the carrier had "knowingly and willfully" failed to comply with the statute, thereby entitling the United States to judgment for the penalty.

It may be conceded that the delay for the time necessarily consumed in repairing the brakebeam was, in the language of the statute, one of those "accidental or unavoidable causes which can not be anticipated or avoided by the exercise of due diligence and foresight". Chicago B. & Q. R. Co. v. United States, 8 Cir., 194 F. 342; United States v. Boston & Maine

R. R., 1 Cir., 99 F.2d 635. However, this would be no excuse for failure to unload the cattle within the 36-hour period unless such delay prevented the train from reaching Boston in time. to comply with the statute. But despite the loss of 35 minutes repairing the brakebeam, it appears that the train could still have arrived in Boston in time enough, had not the subsequent additional delay of 40 minutes occurred due to the return trip to Ayer to pick up the conductor. As it was, the car was placed for unloading in the yards at Boston 40 minutes beyond the statutory period, which was exactly the amount of delay that had been occasioned by going back for the conductor. Since (as provided in Section 1) the time consumed in the actual operation of unloading is not counted in computing the 36-hour period, United States v. Northern Pac. Terminal Co., C.C., 186 F. 947, 949, it thus appears that the railroad would have just got in under the wire, despite the delay in repairing the brakebeam, had the additional delay not occurred.

 The trial judge was clearly warranted in his finding that "The delay occasioned by the necessity of picking up the conductor does not come within the class of unavoidable causes which could not be anticipated or avoided by the exercise of due diligence and foresight." Appellant argues that there is no basis in the facts for an inference that either the conductor or the engineer was negligent in allowing the train to pull out of Ayer without the conductor on board. This seems to us a plain case of res ipsa loquitur. The given facts may be too meager to permit an assignment of the fault precisely, but it is certainly reasonable to infer that this episode would not have occurred without negligence on the part of some servant of the railroad.

But it is contended further that as a matter of law the carrier here was not guilty of "knowingly and willfully" failing to comply with the statute. Both sides rely upon United States v. Illinois Central Railroad Co., 303 U.S. 239, 58 S.Ct. 533, 82 L.Ed. 773, which is the only case in which the Supreme Court has had occasion to consider the meaning of "knowingly and willfully" in this particular statute. It must be acknowledged that each side can find passages in this opinion favor-

---

[2] The basic period of 28 hours was extended to 36 hours in the present case by written request of the shipper, as provided in Section 1 of the Act.

able to its contentions. The railroad points to the statement (303 U.S. at page 242, 58 S.Ct. at page 534, 82 L.Ed. 773) that "The penalty is not imposed for unwitting failure to comply with the statute"; also, to the fact that the Supreme Court quoted with apparent approval (303 U.S. at page 243, 58 S.Ct. 533, 82 L.Ed. 773) an earlier opinion in St. Louis & S. F. R. Co. v. United States, 8 Cir., 169 F. 69, 71, in which Circuit Judge Van Devanter construed "willfully" as implying something more than "knowingly"; as meaning "purposely or obstinately" and describing "the attitude of a carrier, who, having a free will or choice, either intentionally disregards the statute or is plainly indifferent to its requirements." On the other hand, the Government points to the statement in the Supreme Court's opinion (303 U.S. at page 242, 58 S.Ct. at page 534, 82 L.Ed. 733) that "The Act is to be construed to give effect to its humanitarian provisions"; and again (303 U.S. at page 244, 58 S.Ct. at page 535, 82 L.Ed. 733) that "To hold carriers not liable for penalties where the violations of sections 1 and 2, 45 U.S.C.A. §§ 71, 72, are due to mere indifference, inadvertence, or negligence of employees would defeat the purpose of section 3."

However, when one looks at the actual decision in the Illinois Central case in the light of the agreed subsidiary facts, the case gives more comfort to the Government than to the carrier. It appeared that the yardmaster at New Orleans, having received advance information of the approximate time of arrival of the cattle car and of the time when the 36-hour period would expire, "in order promptly to handle the shipment, procured an extra engine and crew immediately upon arrival of the car to take it to the stockyards and, before the expiration of the permissible time of confinement, there place it for unloading." Unfortunately, however, the yardmaster, who thus had manifested his concern to see that the statute was complied with, "negligently failed to notify the employee, whose duty it was to unload; and because of his oversight and negligence the cattle were continuously confined in the car for 37 hours." On these facts it is difficult to say that the yardmaster either intentionally disregarded the statute or was "plainly indifferent to its requirements." Nevertheless the Supreme Court reversed the holding of both courts below and ruled as a matter of law

that the carrier had "knowingly and willfully" failed to comply with the statute.

In the case at bar the court below reasoned as follows: "When the conductor's absence was first noted, the defendant acting through the next man in charge of the train had an election to proceed to Boston and unload within the statutory period or to return for the conductor and overrun the time limit. Whether guided in this decision by rules of the road, or merely acting through custom, the person who made the decision to return for the conductor knowingly and willfully put the defendant in a position where it could not in the usual course of things comply with the statute." The carrier objects that there is no warrant in the evidence for an assumption that either the engineer or any of the remaining train men knew the time when the statutory period would expire; hence that it cannot be said that the employee who made the decision to return for the conductor knowingly and willfully put the carrier in a position where it could not comply with the statute. But it seems unlikely that this would be a closely guarded secret known only to the conductor.

In any event, the conclusion of the court below that the noncompliance was knowing and willful may be supported on another line of reasoning:

█ In the absence of evidence to the contrary, it is fair to assume that when the defendant took possession of the carload of sheep at Mechanicville, its servants learned, as it was their duty to find out, that the animals had already been continuously confined by the connecting carrier for 22 hours without unloading. The statutory period expired at 5:50 a. m., at a time when the train was about 15 minutes out of Boston. At that time the defendant knew that the 36-hour period had expired. Its continuing confinement of the cattle thereafter was a knowing confinement in excess of 36 hours. Cf. Oregon-Washington R. & Nav. Co. v. United States, 9 Cir., 205 F. 341. So much for "knowingly".

█ As to "willfully", United States v. Illinois Central Railroad Co., supra, makes clear that this word had been considerably denatured in the process of statutory construction, and properly so, considering the type of statute involved and its humane purpose. All "willfully" requires is that the carrier must have had a choice; that

the overconfinement was not unavoidable or due to circumstances beyond the carrier's control; a knowing overconfinement becomes also willful when it could have been avoided by the exercise of due diligence and foresight. This was all spelled out nearly a half century ago in Newport News & M. Val. Co. v. United States, 6 Cir., 61 F. 488, 489. In that case the court upheld a charge to the jury that if they found the live stock had been confined in the cars in excess of the statutory period, "it would be no defense that such confinement had been caused by an accident to the train, due to negligence". Lurton, C. J., in a strong opinion in which Taft, C. J., concurred, said:

"If the accident was one which might have been avoided by due care, then the carrier must be taken to have contemplated the reasonable consequences of his own negligence. In this sense, he may be said to have 'knowingly and willingly' failed to comply with the requirements of the law. If he was not prevented by lawful excuse, he has knowingly and willingly failed to unload for rest, food and water, as required by law. The several sections of the act must be construed together. We must give effect to the first section, as well as to the third. To put the construction upon the words 'knowingly and willingly' contended for by appellant, would be to eliminate the positive terms of the affirmative section of the act. Congress has specified the excuse which will take a case without the act. If the statutory contingencies are not shown to have prevented compliance, the carrier has willingly failed to unload as required."

It may be noted that this case came up under the earlier version of the statute (Rev.Stat. §§ 4386–4390), in which the saving clause read: "unless prevented from so unloading by storm or other accidental causes". Congress, when it came to reenact the statute in 1906, evidently intended to put the matter beyond doubt, for it elaborated the saving clause in Section 1 to read, in its present form, "un-less prevented by storm or by other accidental or unavoidable causes which can not be anticipated or avoided by the exercise of due diligence and foresight". In other words, Congress specifically wrote into the reenactment an interpretation which had been read by some courts into the earlier version of the statute. See also United States v. Atchison, T. & S. F. Ry. Co., D.C., 166 F. 160, 162, 163; United States v. Southern Pacific Co., D.C., 157 F. 459, 463.

■ Here, as has been shown, but · for the railroad's stupid blunder in allowing the train to pull out of Ayer minus the conductor, it would have been possible for the shipment to have reached Boston in time enough. "As respondent could act only through employees, it is responsible for their failure." United States v. Illinois Central Railroad Co., supra, 303 U. S. at page 244, 58 S.Ct. at page 535, 82 L. Ed. 773.

■ Furthermore, even if we assume that the necessary delay for repairing the brakebeam made inevitable and unavoidable a few minutes of overconfinement, this would not excuse the additional 40 minutes of overconfinement resulting from the negligence of the carrier in leaving the conductor behind when the train pulled out of Ayer. During that additional time the carrier was "knowingly" confining the animals for a period longer than 36 hours, and since such confinement would have been avoided by the exercise of due diligence and foresight the carrier has caused it "willfully" within the meaning of the statute. To assert the contrary would involve the proposition that when an unavoidable accident makes necessary some overrunning of the 36-hour period, the carrier has no obligation of due diligence to terminate the overconfinement as soon as possible. Quite obviously such a conclusion would be inconsistent with the purpose of the statute.

The judgment of the District Court is affirmed.