### JOHNSON v. HUNT.
#### Civ. No. 2574.

United States District Court,
W. D. Kentucky, at Louisville.
June 14, 1954.

Chas. G. Middleton, Jr., Albert F. Reutlinger, Middleton, Seelbach, Wolford, Willis & Cochran, Louisville, Ky., for plaintiff.

Thos. J. Wood, Doolan, Helm, Stites & Wood, Louisville, Ky., for defendant.

SHELBOURNE, Chief Judge.

This action was instituted by the Plaintiff in the Jefferson Circuit Court February 6, 1953. The Plaintiff, as the Administrator of the Estate of Walter Ellsworth Russell, sued Major Frederick K. Hunt, to recover $65,000 damages arising out of the alleged wrongful death of Walter Ellsworth Russell, who was killed on Highway 31–W, without the Military Reservation at Fort Knox, Kentucky, on January 29, 1952 in a collision between the cars of decedent and the defendant.

Defendant seasonably filed a petition and bond for removal, alleging that the plaintiff was a resident of the State of Kentucky and the defendant a resident of the State of Massachusetts.

The action was tried to the Court without a jury on January 20, 1954. From the stipulations; response to re-

quests for admissions and the testimony, the Court makes the following—

### Findings of Fact

1. The plaintiff Ben J. Johnson, suing herein as Administrator of the Estate of Walter Ellsworth Russell, is a citizen of Jefferson County, Kentucky. The defendant Frederick K. Hunt, is a citizen of the State of Massachusetts. This Court has jurisdiction of the parties and of the subject matter in this action. 28 U.S.C.A. § 1332(a)(1).

2. U. S. Highway 31 W, frequently referred to in the evidence as the "Dixie Highway" runs in a generally north and south direction between Fort Knox and Louisville, Kentucky, and is a four-lane highway of concrete pavement, on either side of which pavement, there is a dirt and gravel berm or shoulder varying in width from five to ten feet. The portion of the highway to the east of the center thereof is used for north-bound traffic and the half to the west of the center of the highway is used for south-bound traffic, the center of the highway being marked by two yellow painted lines. There is no island or other barrier separating the north-bound traffic lanes from the south-bound traffic lanes. This highway is one of the most heavily traveled in the Commonwealth of Kentucky.

3. The collision between the automobiles of plaintiff's decedent and defendant occurred approximately at midnight on December 6, 1952, at a point on the highway a short distance north of the highway bridge spanning Salt River.

Admittedly, the highway was straight and level for a distance of from five hundred feet to a half mile north and south of the point of collision and was on a fill some twenty feet high, with resulting embankments.

4. The defendant, Major Frederick K. Hunt, hereinafter referred to as Major, was driving a 1952 automobile northwardly in the traffic lane immediately east of the center of the highway which was the west of the two north-bound traffic lanes, and was operating his automobile at a speed of fifty miles per hour. The headlights and brakes on the Major's automobile were in good condition and he was driving with his lights on low beam, which, according to the Major's testimony, enabled him to distinguish objects on the highway one hundred feet or more ahead of his car.

5. Major Hunt, on the evening of the night on which the accident occurred, had gone to the Officers Club for his dinner. Before eating, he had a cocktail at about nine o'clock and had several after dinner and about 11:30, left the Officers Club and started in search of a restaurant to get some food and was alone in the car.

6. The decedent Russell, twenty years of age, was a private in the Army and prior to his induction into the Army, had been employed by a Crucible Steel Mill, earning about thirty-five dollars per week. There is no evidence of Russell's whereabouts immediately preceding the accident, but about eleven o'clock, Officer Watson had encountered Russell at a place known as the "Galleries" and had warned him about his condition.

7. As the Major approached the scene of the accident and when about one hundred to one hundred fifty feet south of the place where the accident occurred, he observed Russell's automobile stationary diagonally across the western north-bound traffic lane in which the Major was driving and there were no lights burning on the Russell car. There is not in the record evidence from which it could be concluded that the Major could have seen the car with his headlights on low beam at any greater distance than that in which he discovered the parked car. There were no cars traveling southward in the western traffic lanes, the headlights of which would have interfered with Major's view ahead of his car and no cars were following him. The Major attempted to avoid the Russell car, but the cars collided and the damage to defendant's car was to its left side largely and in the collision Russell's body was thrown from

his car and came to rest across the yellow line in the middle of U. S. Highway 31–W. His automobile went off the highway, down the twenty-foot embankment at a point about opposite the point of collision on the east of the highway. The Major's car proceeded at a distance from one hundred twenty-five to two hundred feet north of the point of collision and·it too went down the embankment on the east side of the highway. The point of impact was identified by various witnesses who arrived after the accident by glass and debris resulting from the collision and which, according to the witnesses, was about the middle of the eastern half of the highway, but within the easternmost traffic lane.

8. It was stipulated between the parties that Russell was admitted to the United States Army Hospital about two a. m. following the accident and that his examination there showed that he was not under the influence of intoxicants or drugs; had suffered a basal skull fracture; hemorrhaged from his nose and ears and his left clavicle was fractured, and that he died without regaining consciousness about seven o'clock p. m. on December 7th. An autopsy determined that his death was caused by a basilar skull fracture.

9. Officers of the Jefferson County Police and of the State Highway Police, who talked with Major at the scene of the accident, said that he appeared to be somewhat nervous but not under the influence of liquor, nor were they able to detect the fumes of liquor on his breath.

10. The Major was not injured and after his car came to rest, after traveling a considerable distance north along the highway and down the embankment, on the east side thereof, he got out of his car and immediately went to the Russell car and found it unoccupied and went back up the embankment and found Russell's body at a point on the highway above indicated.

## Conclusions of Law

If the findings of fact, as found above, represent a fair analysis of the evidence in this case, in which there is comparatively little dispute, the following conclusions of law would seem to be applicable and controlling—

1. Under the Court's view, the case finally poses but one question and that is whether under the "Humanitarian Doctrine" or the "Last Clear Chance", the plaintiff is entitled to recover. However negligent the defendant Major Hunt may have been, there is little room for cavil or doubt that the undisputed evidence with respect to the plaintiff decedent's conduct on the occasion amounted to such contributory negligence, that no recovery could be considered for the plaintiff, except it be found that after the condition of peril of decedent on the highway was discovered by Major Hunt, he could, with the means at his command, avoid bringing his car in collision with decedent's automobile. Considering, however, the conduct of the parties up to the point where the "Last Clear Chance Doctrine" would obtain, it would appear; that from the testimony of Major Hunt, he was operating his car at a maximum legal speed permitted by KRS 189.390(2)(a), which provides that vehicles other than motor trucks, semi-trailer trucks, or motor vehicles of five horse-power or less, may not be operated during the nighttime at a speed in excess of fifty miles per hour, and by subsection (1) of the above statute, he was required to drive at no greater speed than was reasonable and prudent, having regard for the traffic and for the condition and use of the highway.

Section 189.040 of KRS requires that his car be equipped with two lamps in front of sufficient power to reflect clearly substantial objects at least three hundred fifty feet ahead.

By subdivision (b) of subsection (1) of the above statute, the lights when operated on low beam were required to be sufficient to reflect objects one hundred feet ahead.

It is undisputed that Major Hunt operated his car from the time he left the Officers Club at Fort Knox up until the

happening of the accident, with the lights on low beam.

KRS 189.390, while fixing speed limits beyond which the operation is unlawful, provides in the first section—

"No operator of a vehicle upon a highway shall drive at a greater speed than is reasonable and prudent, having regard for the traffic and for the condition and use of the highway."

■ It would seem reasonable to conclude that the operator of a car, with his lights on low beam, would require a rate of speed that would have enabled him to have avoided a collision with other vehicles on the highway, coming within the range of his lights one hundred feet distant. A driver, unable to see the road ahead because of a temporary condition, must take other precautions dictated by ordinary care. City of Providence v. Young, 227 Ky. 690, 13 S.W.2d 1022. This rule is true because a rate of speed, though not unlawful, may be negligent under some circumstances and not negligent under others, the degree of care being measured by the peculiar circumstances and consequent obligations. If the driver's vision of the road ahead is obscured by temporary conditions, such as clouds of dust, smoke, fog, or temporary atmospheric conditions, it is his duty to exercise ordinary care, having regard for the extraordinary conditions. If he continues, with knowledge of the presence of such interference to his vision without taking other precautions, such as reduction in speed, he is negligent. See E. P. Barnes & Bros. v. Eastin, 190 Ky. 392, 227 S.W. 578; Best's Adm'r v. Adams, 234 Ky. 702, 28 S.W.2d 484, and Trevillian v. Boswell, 241 Ky. 237, 43 S.W.2d 715.

■ By this reasoning, the Court concludes that the evidence here warrants the conclusion that Major Hunt, in operating his car with his vision restricted by the use of his lights on low beam, driving at a maximum lawful rate of speed for the operation of a car in the nighttime on a highway known to be heavily traveled, was negligent.

■ 11. However, a mere recitation of the facts with respect to Russell's car, is of itself sufficient to force the conclusion, not only that, he was contributorily negligent, but that his contributory negligence contributed to the extent that his open violation of the statute, in bringing his automobile unlighted, to rest on his left side of the center of this highway and obstructing the entire portion of the northbound traffic lane, would preclude any recovery his estate might otherwise be entitled to on account of Major Hunt's negligence.

Section 189.450, KRS prohibits the stopping or leaving standing upon the main traveled portion of a highway of a vehicle.

Sections 189.030 and 189.040 require that an automobile be equipped with lights on the occasion in question.

■ 111. The controlling question in the case, in the Court's view, is whether under the Last Clear Chance Doctrine, the decedent's estate is entitled to a recovery, which means a determination whether under the proven facts, after the decedent's perilous position on the highway was discovered by Major Hunt, he could have, with the means at his command, avoided colliding with decedent's car.

"When the last clear chance rule makes its entry on the stage, all antecedent negligence of either party retires from the case." * * *

Hewitt's Adm'r v. Central Truckaway System, 302 Ky. 459, 194 S.W.2d 999; Swift & Co. v. Thompson's Adm'r, 308 Ky. 529, 214 S.W.2d 758; Braden's Adm'r v. Liston, 258 Ky. 44, 79 S.W.2d 241.

■ When the curtain falls on the antecedent negligence of both parties, a new duty devolves upon the defendant, and the last Clear Chance rule does not make its entry on the stage unless the perilous position of the plaintiff (plain-

tiff's decedent here) has become apparent and there is an opportunity, by the exercise of ordinary care with the means at command, to avoid the collision.

■ In the recent case of Kentucky & West Virginia Power Company v. Lawson, 240 S.W.2d 843, and Sadler v. Parham, 249 S.W.2d 945, it is apparent that in recent cases, the Kentucky Court of Appeals has placed limits upon the application of the Last Clear Chance Doctrine, so as to give recognition and meaning to the defense of contributory negligence, since contributory negligence, under the law of Kentucky, constitutes a complete defense to actions based upon defendants' negligence.

■ These cases and the case of Swift & Co. v. Thompson's Adm'r, supra, are relied upon by the defendant in this case, it being vigorously argued that Major Hunt discovered the perilous condition of decedent's automobile as soon as the range of his lights would have permitted—that is, when he was one hundred feet away from decedent's car, traveling at a rate of speed of fifty miles an hour, and it is strongly urged that within that distance, allowing time for realization on the part of Major Hunt of the discovered peril, he did all that he could to avoid the collision.

In the Lawson case, supra [240 S. W.2d 846], the Court said—

" * * * (1) the plaintiff must be in a position of peril, not merely present in the vicinity; (2) the situation should be obvious to a reasonable person; and (3) there must be a reasonable time remaining within which the defendant may take affirmative steps to avoid the accident."

From the facts in this case, it is obvious that the plaintiff was in a position of peril because his automobile was diagonally across Major Hunt's northbound traffic lane, with no lights, and this situation obviously presented a perilous condition to any reasonable mind and in fact to Major Hunt, according to his own testimony, the vital question being whether there was reasonable time remaining within which he, with the means at his command, could have avoided the accident. And this means, under the rule of the Lawson case, that the defendant under the proof, had the *last chance* and a *clear chance*, with the means at his command, to avoid the collision.

It is undisputed in this case that Major Hunt observed no traffic approaching him from the north, the glare of whose lights, so occupying his left side of this highway, would have obstructed his going to his left to avoid the collision.

He observed no traffic following him, as he approached the scene of the accident, and correspondingly, he could have turned his car into the eastmost of the northbound traffic lanes and avoided the collision, and in both events have remained upon the pavement. In either event, he would only have had to pass from one traffic lane to an adjoining traffic lane. To say that a person could not appraise a situation of peril and accomplish either movement, is placing the requirements of reasonable care, even in extreme circumstances, at too low a level.

■ It is therefore concluded that under the Doctrine of Last Clear Chance, as applied to the facts in this case, plaintiff's decedent is entitled to recover. The Court is of opinion that $10,000. is an amount reasonably adequate to compensate for the destruction of plaintiff decedent's earning power and a judgment for that amount will be presented by plaintiff's Counsel, upon notice.