812

UNITED STATES

v.

ST. JOHNSBURY TRUCKING CO., Inc.

Crim. No. 4925.

United States District Court,
D. Maine, S. D.

July 8, 1954.

Peter Mills, U. S. Atty., Farmington, Herman F. Mueller, Boston, Mass., for plaintiff.

Wilfred A. Hay, John E. Hanscomb, Portland, for defendant.

CLIFFORD, District Judge.

This action is based upon an information brought by the United States of America against the St. Johnsbury Trucking Company, Inc., a common carrier, by motor vehicle, charging the defendant with violations of the Explosive and other Dangerous Articles' Regulations, prescribed by the Interstate Commerce Commission, pursuant to Title 18, § 835, of the U.S. Code. There are two counts in the information which are as follows:

1. Knowingly failing to mark or placard a motor vehicle used in transporting corrosive liquid. (49 C.F.R. 77.823, Title 18, Section 835, U.S.C.)

2. Knowingly failing to require a driver in its employ operating a motor vehicle engaged in transporting corrosive liquid to have in his possession shipping papers or other memoranda showing the prescribed label applied to the outside container of such corrosive liquid. (49 C.F.R. 77.817, Title 18, Section 835, U.S.C.)

Counsel for both the defendant and the government waived trial by jury. The case, therefore, was submitted to and heard by the Court. The government's sole witness was Mr. Edward Shea, an inspector employed by the Interstate Commerce Commission. The defendant called two of its employees as witnesses, a Mr. Morin and a Mr. Stranahan. The facts, briefly stated, are as follows:

The defendant corporation is one of the largest motor transportation companies in New England and maintains seven or eight terminals. It employs in excess of 750 people and owns and operates approximately 600 motor vehicles.

On October 24, 1952, Inspector Shea, while in the performance of his official duties, observed a truck, owned and operated by the defendant company, delivering wet storage batteries on Kennebec Street to the Community Oil Company in Portland, Maine. He thereupon made a spot investigation and observed that the defendant's truck contained seventy wet storage batteries, each bearing a four inch square label denoting its dangerous content. He talked with the defendant's truck driver who, at his request, produced the shipping papers or memoranda in his possession which indicated that the total weight of the batteries was 3550 pounds. He noticed that the shipping papers or memoranda, shown to him by the defendant's driver, lacked the prescribed inscription and likewise noted that the truck was not placarded on its four sides with any explosive sticker labels, marked, "Dan-

gerous", as required by the regulations of the I.C.C.

In answer to a question asked of the driver by Inspector Shea as to his reasons for his failure to have affixed to the trailer the "Dangerous" placards, the driver answered that he was only a driver and did not know anything about such things.

This particular shipment, originating in Fairfield, Connecticut, had as its original carrier the Bay State Motor Express and was transported to the defendant's terminal in Cambridge, Massachusetts. The dispatcher for St. Johnsbury received the shipment and signed the delivery receipt which had been prepared by the Bay State Motor Express. A duplicate of the delivery receipt was then sent to the main billing room where three rating and five billing clerks were employed.

In the usual course of processing the paper work of a shipment, a rating clerk receives a duplicate of the delivery receipt from the dispatcher, observes the items listed thereon, checks the division and rates, and determines the charge for the transportation. He also has the duty imposed upon him by the defendant company of attaching a label to the delivery receipt which designates the shipment as being explosive or of a dangerous nature if warranted by the type and amount of cargo. In this case the rating clerk failed to attach a warning label to the duplicate receipt although required by the amount and type of cargo.

The delivery receipt, according to the defendant's practice, is then sent to the billing clerks who perform their duties. Following this, a manifest is prepared and a trailer is assigned to transport the cargo to its destination. A totalizer then totals the amount of weight of all items to be shipped on a particular trailer. If the weight of the dangerous articles such as are involved here, exceeds twenty-five hundred (2500) pounds, a trailer sticker is sent along to the dispatcher, who supervises the loading of the trailer and whose duty it is to attach an explosive sticker label on each side of the vehicle, for the purpose of warning the public of the dangerous nature of the cargo.

In this particular case, as already noted, the trailer was not properly marked and placarded showing that said motor vehicle was transporting a dangerous corrosive liquid. Nor did the driver have in his possession shipping papers or other memoranda showing the prescribed label applied to the outside container of the corrosive liquids.

Approximately ten days after Mr. Shea made the spot investigation as aforementioned, he brought the matter to the attention of the officials of the defendant company. They denied knowledge of this occurrence and immediately commenced an investigation. As a result of this investigation, they admitted that there was negligence on the part of one or more of their employees in permitting the shipment to be transported from Cambridge to Portland in the manner aforementioned.

The basic issue in this case is whether the offense with which the defendant is charged requires proof with regard to the element of criminal intent. The determination of the issue turns upon the meaning of the word "knowingly" as used in section 835 which reads, in part, as follows:

"Whoever knowingly violates any such regulation shall be fined not more than $1,000 or imprisoned not more than one year, or both; and, if the death or bodily injury of any person results from such violation, shall be fined not more than $10,000 or imprisoned not more than ten years, or both." 18 U.S.C. § 835.

The defendant contends that the facts in this case clearly indicate that the failure to attach explosive sticker placards upon all sides of the truck in which the batteries were transported and its failure to provide its driver with shipping papers or other memoranda showing the prescribed label applied to the outside containers of such corrosive liquid was

an oversight and a mistake; that it was the result of negligence of one or more of its employees; that its failure to comply with the regulations was not intentional, and, therefore, was not knowingly done in violation of the statute and regulations as set forth in the provisions contained in this information; and, that the defendant should be found not guilty of said charges.

The Government contends that the defendant, being a corporation, is responsible for the acts of its agents; that there was a complete disregard of the duty imposed upon the defendant by the regulations to make the prescribed regulations effective; that it is not necessary for the Government to prove any element of deliberation; that the only "knowledge" or "knowingness" necessary to convict here is as to the name of the commodity and the volume thereof; and that the defendant in this case was possessed of such knowledge but failed to comply with the regulations and, therefore, should be found guilty.

Whether intent is a requisite element to be proved under section 835 depends, of course, upon the wording of the statute but primarily upon the nature of the offense. That sections 831–835 of Title 18 and the regulations thereunder involve so-called "public welfare" offenses is plain. See Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367, where the Supreme Court traced the history of this legislation. Indeed, the "public welfare" nature of the offense is clearly indicated by the general purposes of the regulations applying to motor carriers, as set forth in 49 C.F.R. Section 77.800.[1]

Offenses of the type involved herein are commonly designated as being malum prohibitum and do not require proof with regard to the element of criminal intent. See Armour Packing Co. v. United States, 209 U.S. 56, 28 S.Ct. 428, 52 L.Ed. 681; Chicago, St. P., M. and O. R. Co. v. United States, 8 Cir., 162 F. 835; Grand Trunk R. Co. v. United States, 7 Cir., 229 F. 116; St. Joseph Stockyards Co. v. United States, 8 Cir., 187 F. 104; Oregon-Washington R. & Nav. Co. v. United States, 9 Cir., 205 F. 337; and, United States v. Illinois Central R. Co., 303 U.S. 239, 58 S.Ct. 533, 534, 82 L.Ed. 773.

The case of United States v. Illinois Central R. Co., supra, is particularly applicable. The issue in that case was whether or not the respondent "knowingly and willfully" failed to comply with the requirements of an act which prohibited the confinement of cattle in the same car for longer than 28 consecutive hours or 36 hours if by consent of the owner. It was alleged that the yardmaster, having received advance information of the approximate time of arrival and of the time when the 36 hour period would expire, had the car taken to the stockyards for unloading; that the yardmaster negligently failed to notify the employee, whose duty it was to unload; and, because of his oversight and negligence, the cattle were continuously confined in the car for 37 hours.

The Court reversed a lower decision and found that the respondent had violated the statute. The Court stated:

"Considered as unaffected by the yardmaster's negligence, respondent's failure to take the cattle from the car already placed at the yard for unloading, unquestionably discloses disregard of the statute and indifference to its requirements and

---

1. "Section 77.800 *Purpose of regulations in parts 71–78 of this chapter.* (A) To promote the uniform enforcement of law and to minimize the dangers to life and property incident to the transportation of explosives and other dangerous articles, by common and contract carriers, by motor vehicle engaged in interstate or foreign commerce, the regulations in Parts 71–78 of this chapter are prescribed to define these articles for motor vehicle transportation purposes, and to state the precautions that must be observed by the carrier in handling them while in transit. It is the duty of each such carrier to make the prescribed regulations effective and to thoroughly instruct employees in relation thereto." 49 C.F.R. 77.800.

compels the conclusion that, within the meaning of section 3, 45 U.S.C.A. § 73, respondent willfully violated its duty to unload as required by section 1, 45 U.S.C.A. § 71. It is immaterial whether the yardmaster's negligence or oversight was intentional or excusable. As between the government and respondent, the latter's breach is precisely the same in kind and degree as it would have been if its yardmaster's failure had been intentional instead of merely negligent. The duty violated did not arise out of the relation of employer and employee but was one that, in virtue of the statute, was owed by respondent to the shippers and the public. As respondent could act only through employees, it is responsible for their failure. To hold carriers not liable for penalties where the violations of sections 1 and 2, 45 U.S.C.A. §§ 71, 72, are due to mere indifference, inadvertence, or negligence of employees woud defeat the purpose of section 3." United States v. Illinois Central R. Co., supra, 303 U.S. at pages 243, 244, 58 S.Ct. at page 535.

The reason that the element of criminal intent is not required in offenses of this type is well expressed in the case of Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 246, 96 L.Ed. 288:

"While such offenses do not threaten the security of the state in the manner of treason, they may be regarded as offenses against its authority, for their occurrence impairs the efficiency of controls deemed essential to the social order as presently constituted. In this respect, whatever the intent of the violator, the injury is the same, and the consequences are injurious or not according to fortuity. Hence, legislation applicable to such offenses, as a matter of policy, does not specify intent as a necessary element. The accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities." Morisette v. United States, supra, 256.

The defendant in support of its position relies primarily upon the case of Morissette v. The United States, 342 U.S. 246, 7 S.Ct. 240, 96 L.Ed. 288. This and the other cases cited by the defendant are not in point insofar as this proceeding is concerned.

The Morissette case involved a conversion of Government property to the defendant's own use. The defendant was charged with unlawfully stealing and converting property of the United States to the value of $84.00. The Supreme Court found that this offense had its origin in the common law crimes of larceny and embezzlement which were malum in se, and that in consequence the existence of some intent was necessary to sustain a conviction.

Nowhere in this decision is there the slightest hint that it in any way controls situations involving crimes which are merely malum prohibitum. To the contrary, the Court clearly distinguished the case before it from situations involving offenses malum prohibitum and pointed out that malum prohibitum offenses are not in the nature of "positive aggressions" or offenses of the type with which the common law so often dealt, but that offenses malum prohibitum generally involve something "in the nature of neglect where the law requires care, or inaction when it imposes a duty." Although the Court was not deciding a malum prohibitum matter, it did, for contrast, at several points, clearly indicate that no element of intent is necessary in such cases; that offenses malum prohibitum frequently are characterized in conduct involving carelessness or neglect; and, that Congress has used such terms as will make criminal an indifferent act.

**816**

In the opinion of this Court, therefore, this case is clearly an affirmation of the doctrine that the language of such statutes as concerned herein must be considered in the light of the evils sought to be remedied. Thus, considering the purposes of section 835, the particular offense requires no element of criminal intent. United States v. Behrman, 258 U.S. 280, 42 S.Ct. 303, 66 L.Ed. 619; United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604. In this instance, therefore, the only "knowledge" or "knowingness" necessary to a conviction is as to the nature of the commodity and its volume. If it is found that the defendant knew, or in the exercise of reasonable care should have known, of the dangerous content of the batteries and the weight of the shipment of said batteries exceeded 2500 pounds, and notwithstanding these facts, the defendant transported the cargo in interstate commerce, there would be a violation of the applicable statutes and regulations, herein concerned.

Having in mind that at least three of the defendant's clerical employees inspected the invoices concerning this shipment; that the operator of the totalizer totalled the amount of weight of all dangerous articles assigned to this particular trailer; that the dispatcher, who supervised the loading of the trailer and whose duty it was to attach an explosive sticker label on the outside of the vehicle, inspected the manifest and saw the seventy batteries each of which bore four inch square white labels, denoting its dangerous nature; and, that the local driver had in his possession the manifest designating the type and amount of cargo, but lacking the proper inscription, the conclusion is inescapable that the defendant had complete knowledge of all of the essential facts relating to the transportation of these dangerous items. Therefore, the failure of the defendant to placard the trailer so as to notify the public at large to be cautious and the failure to properly inscribe the papers in the possession of the driver for the same purpose, constituted a violation of section 835, as charged.

The Court, therefore, finds the St. Johnsbury Trucking Company, Inc., guilty of the offenses charged in the information filed in criminal No. 4925, and the defendant corporation will appear for sentence as ordered.